IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MICHAEL D. RHODES                                                                                   PLAINTIFF

V.                          Civil No. 3:14-cv-03103-MEF

CAROLYN W. COLVIN, Commissioner,
Social Security Administration                                                                      DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Michael D. Rhodes, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background**

Plaintiff filed his application for DIB on August 15, 2012, alleging a disability onset date of December 5, 2011, due to "torn meniscus in left knee and knee injury." (T. 151-157, 174) The Commissioner denied his application initially on September 11, 2012 (T. 82-84), and denied it at reconsideration on October 30, 2012 (T. 86-87). Plaintiff requested an administrative hearing (T. 88-89), and the hearing was held on April 11, 2013, before the Hon. Harold D. Davis, Administrative Law Judge ("ALJ"). (T. 23-60) Plaintiff was present and represented by his attorney, Frederick "Rick" Spencer. (T. 23, 25) Also present was Cheryl Swisher, a vocational expert ("VE"). (T. 25)

At the time of hearing, Plaintiff was 45 years old with a high school education. (T. 28) He

had past relevant work ("PRW") experience as a cable television/satellite/security system installer and construction worker. (T. 31, 49, 56)

On July 30, 2013, the ALJ issued an unfavorable decision finding that Plaintiff's status post left knee medial meniscus tear repair and depression were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (T. 12-14) After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that he would be limited to work involving only simple tasks and simple instructions. (T. 14)

With the help of the VE, the ALJ determined Plaintiff could not perform his PRW, but he could perform the requirements of representative occupations such as fast food worker (DOT 311.472-010), with 20,000 such jobs existing in Arkansas and one to two million in the national economy; cashier (DOT 211.462-010), with 30,000 such jobs in Arkansas and 500,000 in the national economy; and, office helper (DOT 239.567-010), with 2,000 such jobs in Arkansas and 200,000 in the national economy. (T. 17-18) The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (T. 19)

The Appeals Council denied Plaintiff's request for review on September 26, 2014. (T. 1-4) Plaintiff filed this action on November 7, 2014. (Doc. 1) This case is before the undersigned by consent of the parties. (Doc. 5)  Both parties have filed appeal briefs (Docs. 10, 11), and the case is now ready for decision.

## II.  Applicable Law

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than

a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Plaintiff raises two issues on appeal: (1) the ALJ's determination of Plaintiff's RFC is unsupported by substantial evidence as it has no medical support and is made by the ALJ's own layman's interpretation of the medical records, and (2) the ALJ erred in failing to consider the dosage, effectiveness, and side effects of the Plaintiff's medications as a component of the credibility determination. (Doc. 10, pp. 6-10)

The Court has thoroughly reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

The ALJ's RFC determination is troubling. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing his or her RFC. *Vossen,* 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Residual functional capacity "is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in

which real people work in the real world." *McCoy*, 683 F.2d at 1147. Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has clearly held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Thus, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff suffers from pain in both knees, left worse than right. (T. 32, 44) The problem began in a work related accident on December 5, 2011. (T. 32-33, 249) As he related to his orthopaedic surgeon, Plaintiff was going out to the back of his work truck and felt a twisting injury and a pop in his left knee. (T. 297) An MRI of the left knee done on December 14, 2011 revealed mild chondromalacia involving the medial patellar cartilage and non-displaced tears involving the posterior horn and body of the medial meniscus with some small knee joint effusion. (T. 256) During a return visit to his primary care physician on December 19, 2011, Plaintiff reported continued knee pain, and physical exam showed he was mildly tender to palpation over the left knee, had pain with ambulation, moderate effusion, and had a positive anterior drawer sign. He was referred to an orthopaedic specialist. (T. 248-249)

Following orthopaedic evaluation on December 19, 2011 by Jeremy P. Swymn, M.D., a left knee arthroscopy with partial medial meniscectomy was recommended. (T. 297-298) That surgery was performed on January 6, 2012. Dr. Swymn noted in his Operative Report that the MRI showed a large medial meniscus tear, and the procedure revealed a horizontal tear of the lower limb of the medial meniscus starting at the posterior horn and extending around to approximately the 9 o'clock

position on the clock face. The tear was repaired. Interestingly, Dr. Swymn noted that the patellofemoral joint showed no chondromalacia. (T. 258-259) Following the surgery, Plaintiff underwent physical therapy and was seen by Dr. Swymn in follow-up visits. At his physical therapy session on February 8, 2012, the therapist noted remaining deficits of pain, inflammation, decreased range of motion, weakness, and an antalgic gait. (T. 262) During his visit with Dr. Swymn on February 15, 2012, Plaintiff reported bilateral knee pain, describing it as a dull, aching pain, different than his meniscus pain. (T. 293) He had a full range of motion, no real swelling, but he was tender to palpation around the medial compartments of both knees. (T. 294) Dr. Swymn noted that previous x-rays showed some medial joint space narrowing, and that on his last scope he had some Grade III changes to his medial compartment. Both knees were injected with steroids "to see if we can make this better." (T. 294)

On March 28, 2012, two months after his surgery, Plaintiff complained of having severe pain on the medial side of his left knee again, that he can't go up a ladder, was having difficulty with any kind of range of motion, and that "this has gotten significantly worse." (T. 291) Dr. Swymn was perplexed as to why Plaintiff was having pain, and another MRI was ordered. (T. 292) The MRI was performed on April 5, 2012, and it displayed that the medial meniscus was smaller than usual, no definite recurrent tear, and that the patellofemoral joint had "significant disease" in the form of chondromalacia[1]. (T. 300) Plaintiff continued to report bilateral knee pain at his next visit with Dr. Swymn on April 23, 2012, and, despite the MRI evidencing "significant disease" in the patellofemoral joint, Dr. Swymn noted that the MRI "looked fine." Dr. Swymn diagnosed Plaintiff

---

[1] Chondromalacia is a condition where the cartilage on the undersurface of the patella (knee cap) deteriorates and softens. Symptoms include knee pain and grinding sensations. *See* www.healthline.com/health/chonromalacia-patella (last visited on January 21, 2016).

as status post medial meniscectomy with continued pain, and he felt that Plaintiff had reached "maximum medical improvement"[2]. (T. 289-290)

Plaintiff continued to experience bilateral knee pain, and he saw another orthopaedic specialist, Christopher A. Arnold, M.D., on January 29, 2013. Upon evaluation, Dr. Arnold opined that "there is another meniscal tear," and he recommended an additional knee scope surgery. (T. 305) Dr. Arnold advised that Plaintiff may return to work with restrictions of no bending, kneeling, or squatting, no climbing ladders, and no lifting over 100 lbs. (T. 305) The second left knee arthroscopy and medial meniscectomy surgery was performed by Dr. Arnold on September 11, 2013[3]. Plaintiff was advised by Dr. Arnold that he may resume light work with the following restrictions: no lifting, pulling, or pushing greater than 50 lbs.; no kneeling, squatting, stooping, or climbing; and, walking and/or standing limited to less than two hours in an eight-hour workday. (T. 310-313)

Jim Takach, M.D., a State agency non-examining physician, conducted a review of Plaintiff's medical records and assessed Plaintiff's RFC on September 6, 2012. (T. 66-67) Dr. Takach opined that one or more of Plaintiff's medically determinable impairments could reasonably be expected to produce the Plaintiff's pain or other symptoms, and that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms are substantiated by the objective medical evidence. (T. 66) Dr. Takach found that Plaintiff was exertionally limited to the following:

---

[2] A term of art in Arkansas workers' compensation law, signifying that a claimant is as far restored as the permanent character of an injury will permit and that the underlying condition causing disability has become stable and nothing in the way of treatment will improve that condition. *See Shiloh Nursing & Rehab, LLC v. Lawson*, 2014 Ark.App. 433, 439 S.W.3d 696 (2014).

[3] This is after the ALJ's Decision on July 30, 2013, but Dr. Arnold's Physician's and Surgeon's Report of October 8, 2013 was submitted to and considered by the Appeals Council. (T. 4)

he could occasionally lift and/or carry ten pounds, and frequently lift and/or carry less than ten pounds; he could stand and/or walk for a total of two hours in an eight hour work-day; he could sit for a total of six hours in an eight hour work-day; and, he could occasionally climb ramps, stairs, ladders, ropes, scaffolds, balance, kneel, crouch, and crawl. (T. 66-67) Dr. Takach concluded that Plaintiff retained the ability to function at the sedentary level, with postural limitations. (T. 67) On October 30, 2012, another State agency non-examining physician, Valerie Malak, M.D., affirmed Dr. Takach's RFC opinions. (T. 75-77)

The ALJ concluded that Plaintiff "retains the ability to perform less than the full range of exertionally light work activity . . . with frequent walking and standing during the workday . . ." (T. 17) In explaining this determination, the ALJ stated, "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or has limitations greater than those determined in this decision." The medical evidence, particularly the functional restrictions imposed by Dr. Arnold, clearly demonstrates otherwise. The ALJ also stated that the RFC conclusions reached by the State agency consultant also support a finding of "not disabled." (T. 17) While technically this is true, the "not disabled" finding was based upon an RFC at the sedentary exertional level with postural and other limitations that were not included in the ALJ's RFC determination. Given the evidence of record, the Court cannot agree that the ALJ's RFC determination, including no limitations as to walking, standing, bending, kneeling, squatting, climbing, and lifting, pushing, or pulling over 50 pounds, is supported by substantial evidence.

The ALJ's conclusory, and incorrect, statements that the record does not contain any opinions of treating or examining physicians indicating that Plaintiff is disabled or has limitations greater than those the ALJ determined in his decision are insufficient. "[S]uch an explanation does not provide

a sufficient logical bridge between the medical evidence and the RFC determination." *See St. Clair v. Colvin*, 2013 WL 4400832, at *2 (W.D. MO., Aug. 14, 2013). Having disregarded both the physical limitations imposed by Dr. Arnold and the RFC opinions of the State agency physicians, the ALJ's determination that Plaintiff retains the RFC to perform light work involving simple tasks with simple instructions, with no other postural or physical limitations, is tantamount to the ALJ "playing doctor," a practice forbidden by law. *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009), citing *Rohan v. Chater*, 98 F.3d 966 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Accordingly, remand is necessary to allow the ALJ to reconsider the Plaintiff's RFC. On remand, the ALJ is directed to re-contact Dr. Arnold to obtain a thorough RFC assessment to determine the full extent of the functional limitations resulting from Plaintiff's torn left meniscus, status post partial meniscectomy (x 2), and bilateral knee pain.

## V.  Conclusion

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 26th day of January, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE